UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

STEPHEN HUTCHINGS,

        Plaintiff,

        v.

BEN FRANKLIN TRANSIT,

        Defendants.

No. CV-06-5047-FVS

ORDER GRANTING SUMMARY JUDGMENT

**THIS MATTER** came before the Court for a hearing on the Defendant's Motion for Summary Judgment, Ct. Rec. 21, on May 18, 2007. The Plaintiff was represented by Steven C. Lacy. The Defendant was represented by Shannon E. Phillips.

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

Defendant Ben Franklin Transit ("BFT") is a municipal corporation that provides public transportation services in the TriCities and Benton County. Declaration of Timothy Frederickson ("Frederickson Decl."), June 28, 2005, ¶ 2; Compl. ¶ 1.2. Defendant Timothy Frederickson is BFT's General Manager. The Plaintiff is employed as a bus driver in BFT's Dial-A-Ride ("DAR") Program. Declaration of Stephen Hutchings ("Hutchings Decl."), March 14, 2007, ¶ 2.

On May 15, 2004, BFT sold 22 surplus computers at an auction. Declaration of Allen Walch ("Walch Decl."), June 24, 2005, ¶ 3. The

ORDER GRANTING SUMMARY JUDGMENT- 1

Plaintiff purchased three of the computers.  Hutchings Decl. ¶ 3. When the Plaintiff began using one of the computers, he discovered that it had previously been used by Allen Walch, BFT's Administration and Finance Manager.  The computer contained a number of files containing sensitive information, including, but not limited to:

> 1) A list of the names, Social Security numbers, and personal bank account information of BFT employees who participated in the direct deposit program;
>
> 2) Financial reports of BFT board meetings;
>
> 3) An email listing legal claims pending against BFT; and
>
> 4) Email correspondence between BFT and an attorney concerning a pending lawsuit.

Hutchings Dep. at 19-23.

The day that he discovered these files, Hutchings contacted Richard Burnett, BFT's DAR manager, and notified him that one of the computers the Plaintiff had purchased contained "highly confidential information."  Declaration of Richard Burnett, June 28, 2005, ¶¶ 1-2; Hutchings Dep. at 30.  Two days later, Hutchings contacted Walch and told him, "It looks like I purchased a computer that used to belong to you."  *Id.* at 32.  Walch offered to buy the three computers back from the Plaintiff for $30.  The Plaintiff declined this offer and instead requested that the computers be replaced.  *Id*. at 33.  Neither party took any further action regarding the computers the Plaintiff had purchased or the confidential information they contained for a period of ten months.  Hutchings Decl. ¶ 6; Defs.' Statement of Facts In Supp. Of Mots. For Summ. J. ¶¶ 24-25.

In March, 2005, while working as a DAR dispatcher, the Plaintiff came across a computer file that contained the names, employee

ORDER GRANTING SUMMARY JUDGMENT- 2

numbers, and Social Security numbers of between 150 and 200 BFT employees. *Id.* at 56. This file was located on a drive "readily accessible to any workstation at BFT." Hutchings Decl. ¶ 7. Two BFT mechanics also saw the file and one of them promised to fix the problem. Hutchings Dep. at 58-59. The Plaintiff did not inform Burnett that this confidential file was easily accessible. *Id.* 62-63.

When Burnett learned of this incident, he met with the Plaintiff and expressed concern that the Plaintiff had not brought the matter to his attention. Deposition of Richard K. Burnett, February 21, 2007, at 57. The subject of the computers the Plaintiff had purchased the previous year came up, and Burnett attempted to buy the computers back from the Plaintiff. Hutchings Dep. at 66-70. At a subsequent meeting, BFT offered to replace the hard drives on the Plaintiff's computers or to pay to have them erased. The Plaintiff indicated that he would only return the hard drives if at least two members of the Board of Directors ("the Board") were present. *Id.* at 71-72. The Plaintiff has testified that he refused to return the hard drives at this point because "my intent was that this information be divulged to somebody who could resolve it, to get it fixed." *Id.* at 71.

On April 27, 2005, the Plaintiff began to circulate a petition to other BFT employees. The petition noted, "extremely sensitive information, specific to the personal identities of [BFT's] employees, has repeatedly been compromised and followed up with a disturbing attempt to cover up the wrong." Hutchings Decl. ¶ 10, Ex. A. The petition also expressed the employees' concern that these security lapses, "have put Ben Franklin Transit's future in a vulnerable

ORDER GRANTING SUMMARY JUDGMENT- 3

position." *Id.* On the same day, the Plaintiff notified Burnett that he and other employees wished to attend the May 12 meeting of the Board. Hutchings Decl. ¶ 10; Burnett Decl. ¶ 4.

The Plaintiff initially contacted other employees about signing the petition at work. Deposition of Norma Weir, August 15, 2005, at 6. On at least two occasions, the Plaintiff continued to ask employees to sign the petition after they had previously declined. *Id.* at 6, 39. Nine or ten BFT employees contacted Norma Weir, a DAR union representative, indicating that they felt threatened or intimidated by the Plaintiff when he contacted them about signing the petition. *Id.* at 38-40. Following these complaints, Weir and two other employees contacted Burnett to express their concerns that the Plaintiff had access to their confidential information. Burnett Dep. at 99-103.

On May 5, 2005, the Plaintiff attended two additional meetings during which BFT personnel attempted to retrieve the confidential information that had been left on the Plaintiff's computers. Hutchings Dep. at 82-83; Declaration of Timothy Frederickson, June 28, 2005, ¶¶ 6-7. On May 9, the Plaintiff emailed Carol Moser, a Board member, expressing his concerns about information security and requesting to meet with the Board prior to their May 12 meeting. Declaration of Timothy Frederickson, March 1, 2007, Ex. A. The Plaintiff also asked Moser to distribute the petition to the rest of the Board. Hutchings Dep. at 116-17.

On May 12, BFT contacted the Plaintiff by letter and ordered him to return the confidential information by 5:00 p.m. Hutchings Dep. at 111. The Plaintiff failed to comply with this directive, explaining

ORDER GRANTING SUMMARY JUDGMENT- 4

at his deposition, "I was going to tell the Board of Directors what was going on before [BFT] got the computers." *Id.* at 119. That evening, the Plaintiff and 20 other BFT employees attended the public portion of the Board meeting. The Plaintiff contends that the Board "refused to even acknowledge their presence." Hutchings Decl. ¶ 16. The Plaintiff further alleges that, while he was permitted to attend the executive session of the Board meeting, the Board refused to hear his concerns in view of his failure to comply with BFT's earlier directive to return the computers. *Id.*

On May 13, BFT scheduled a meeting between the Plaintiff, Burnett, and Debra Hughes of BFT's of Human Resources. Hutchings Dep at 122. When BFT notified the Plaintiff about this meeting, he contacted the TriCity Herald. Deposition of Stephen Hutchings, January 17, 2007, Ex. 4 at 14. The Plaintiff attended the meeting and, during a break, spoke with a reporter from the TriCity Herald. Hutchings Dep. at 123-23. The following day, the TriCity Herald ran a front page article about the Plaintiff's situation. Deposition of Stephen Hutchings, January 17, 2007, Ex. 4 at 14.

On May 16, BFT placed the Plaintiff on paid administrative leave. Burnett Decl., Ex. D. Following a disciplinary hearing on June 1, BFT demoted the Plaintiff from his position in dispatch to a DAR driver. Burnett Dep. at 114.

In a further attempt to retrieve the computers or the information they contained, BFT filed a civil action against the Plaintiff in June of 2005, alleging trespass to chattels, misappropriation of trade secrets, and conversion. Declaration of Shannon E. Phillips, March 2,

ORDER GRANTING SUMMARY JUDGMENT- 5

2007, Ex. H.  In response to BFT's request for a preliminary injunction, the Washington Superior Court ordered the Plaintiff to give the hard drives to a third party neutral.  Hutchings Decl. Ex. E, ¶ 2.  On March 23, 2006, the Superior Court denied BFT's motion for summary judgment, but found that the information on the hard drives belonged to BFT.  BFT then voluntarily dismissed the suit.  Hutchings resumed his duties as a DAR driver on July 17, 2006.  Hutchings Decl. ¶ 19.

The Plaintiff filed the instant law suit in Benton County Superior Court alleging four causes of action: wrongful retaliation in violation of public policy, defamation, false light, and a Section 1983 claim.  Compl. ¶¶ 3.1-6.4.  The Section 1983 claim alleged deprivations of the Plaintiff's rights under the First and Fourteenth Amendments.  The Defendants removed the action to this Court on June 16, 2006, (Ct. Rec. 1.), and moved for summary judgment on March 2, 2007.  (Ct. Rec. 21.)

In his response to the Defendant's motion for summary judgment, the Plaintiff abandoned all of his claims except the Section 1983 claim alleging deprivation of his First Amendment rights.  The Defendant's motion for summary judgment on the Plaintiff's remaining 1983 claim is now before the Court.

**DISCUSSION**

**III. LEGAL STANDARD**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273-74 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Initially, the party moving for summary judgment bears the burden of showing that there are no issues of material fact for trial. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. Where the moving party does not bear the burden of proof at trial, it may satisfy this burden by pointing out that there is insufficient evidence to support the claims of the nonmoving party. *Id.* at 325; 106 S. Ct. at 2554; 91 L. Ed. 2d at 275.

If the moving party satisfies its burden, the burden then shifts to the nonmoving party to show that there is an issue of material fact for trial. Fed. R. Civ. P. 56(e), *Celotex*, 477 U.S. at 324; 106 S. Ct. at 2553; 91 L. Ed. 2d at 275. There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 212 (1986). Conclusory allegations alone will not suffice to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Rather, the non-moving party must present admissible evidence showing there is a genuine issue for trial. Fed. R Civ. P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

ORDER GRANTING SUMMARY JUDGMENT- 7

**II. RETALIATION UNDER SECTION 1983**

In order to establish a cause of action for retaliation in the context of the First Amendment under Section 1983, the Plaintiff must prove three elements:

1) The Plaintiff engaged in protected speech;

2) The Defendant took an adverse employment action against the Plaintiff; and

3) The Plaintiff's protected speech was a "substantial or motivating factor" for the adverse employment action.

*Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). Once the Plaintiff has established these three elements, the burden shifts to the Defendant to show that the "employer's legitimate administrative interest outweighs the employee's First Amendment rights" under the test established in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1988). *Id.*

The Defendants challenge the Plaintiff's ability to satisfy the first element of a prima facie case, arguing that the Plaintiff did not engage in protected speech. The Defendants also argue that BFT's interest in efficient agency operation outweighs the Plaintiff's interest in free speech.

**A.   Protected Speech**

The Supreme Court has repeatedly affirmed that the government may constitutionally restrict the speech of its employees more stringently than that of the general public. *Pickering v. Board of Educ.*, 391 U.S. at 568; 88 S. Ct. at 1734; 20 L. Ed. 2d at 817 (1968); *City of San Diego v. Roe*, 543 U.S. 77, 78, 125 S. Ct. 521, 523, 160 L. Ed. 2d

410, 414 (2004). Nevertheless, if an employee speaks about "a matter of public concern," the government bears the burden of showing that its interests in promoting the efficiency of the public services it performs through its employees outweighs the employee's interests in speaking. *Pickering*, 391 U.S. at 568, 88 S. Ct. at 1753, 20 L. Ed. 2d at 817.

Whether an employee's speech touches on a matter of public concern is a question of law to be determined by the Court. *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1200 (9th Cir. 2000). In making this determination, courts examine the "content, form, and context" of the speech. *Connick v. Myers*, 461 U.S. 138, 147-148 (1983); *City of San Diego v. Roe*, 543 U.S. at 83, 125 S. Ct. at 525, 160 L. Ed. 2d at 417. The content of the speech is the most important factor. *Thomas,* 379 F.3d at 810.

**1.   Content**

Speech touches on a matter of public concern when it "concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)). It follows that speech necessarily touches on a matter of public concern when it concerns "corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees." *Id*. at 926. The Supreme Court has also indicated that speech bearing on an agency's continuing viability and "efficient performance of its duties" involves a matter of public concern.

ORDER GRANTING SUMMARY JUDGMENT- 9

*Connick,* 461 U.S. at 148; 103 S. Ct. at 1690, 75 L. Ed. 2d at 720. *See also Ulrich,* 308 F.3d at 979 (criticism of a city department's decision to discharge a class of physicians involved a matter of public concern because it raised questions about the hospital's ability to care for its patients); *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999)(holding that employee who questioned the city's ability to effectively respond to fires in the wake of budget cuts engaged in protected speech); *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)(holding that criticism of a city's failure to increase pay for police offices involved a matter of public concern because "compensation levels undoubtedly affect the ability of the city to attract and retain qualified police personnel and the competency of the police force is surely a matter of great public concern").

In contrast, "individual personnel disputes and grievances" are generally not considered matters of public concern. However, where an employee voices concerns about the treatment of other employees, rather than merely complaining about the speaker's own job status, the speech may touch on a matter of public concern. *Thomas*, 379 F.3d at 808. *See also Ulrich*, 308 F.3d at 978 (holding that a doctor's protests concerning the discharge of other physicians touched on a matter of public concern); *Hyland v. Wonder*, 972 F.2d 1129, 1138 (9th Cir. 1992)(holding that a memorandum calling for the termination of a public official touched on a matter of public concern because the employee "spoke in order to bring wrongdoing to light . . . [not] merely to further some purely private interest").

ORDER GRANTING SUMMARY JUDGMENT- 10

The Court finds that the content of the Plaintiff's speech involved a matter of public concern. The Plaintiff's circulation of the petition and his attempts to bring his concerns before the Board raise at least two issues of public concern. First, the Plaintiff and his co-workers expressed concerns about BFT's "financial future," an issue that bears on BFT's ability to perform its public function. Second, the petition alleges that BFT attempted to "cover up" the fact that it negligently released its employees' confidential information. An attempt by a government agency to prevent its employees and the public from learning about such a security lapse is sufficiently misfeasant to raise issues of public concern.

Contrary to the Defendant's argument, the Plaintiff's speech addressed more than an individual workplace grievance. While BFT's release of confidential information did affect the Plaintiff personally, it also affected many other BFT employees. Following *Thomas*, *Ulrich*, and *Hyland,* a workplace problem common to many public employees may raise an issue of public concern.

**2. Context**

In examining the context of speech, courts should consider "the point of the speech," including the motivation driving the speaker and the audience he or she chooses. *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1223 (1996); *Gilbrook,* 177 F.3d at 866. However, these factors are not necessarily determinative. An employee who chooses to address an issue internally does not forfeit First Amendment protections so long as the issue addresses a matter of public concern. *Thomas,* 379 F.3d at 810-811; *Ulrich*, 308 F.3d at 979.

ORDER GRANTING SUMMARY JUDGMENT- 11

Here, the Plaintiff addressed his concerns to other employees and BFT's Board of Directors, the body he believed best able to resolve the problem. Under the case law cited above, the fact that the he did not address his speech to the general public does not diminish the protected status of the speech. The Court finds no merit in the Defendant's contention that the Plaintiff only notified the Board after he was facing disciplinary charges. The materials submitted by the parties bear out the Plaintiff's claim that he began circulating his petition in April, well before BFT placed him on administrative leave or demoted him.

The Court accordingly holds that the Plaintiff's speech addressed a matter of public concern. For the purpose of evaluating the present motion, the Court assumes that the Plaintiff will be able to establish the three elements of a retaliation claim at trial. The Court now turns to the Defendant's argument that its legitimate administrative concerns outweigh the Defendant's interest in the protected speech.

**B.     Government's Interest**

When an employee's speech addresses a matter of public concern, the Court must balance the employee's interest, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568; 88 S. Ct. at 1734-35; 20 L. Ed. 2d at 817. "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer."

ORDER GRANTING SUMMARY JUDGMENT- 12

*Waters v. Churchill*, 511 U.S. 661, 675, 114 S. Ct. 1878, 1888, 128 L. Ed. 2d 686, 699 (1994). This interest is further enhanced when the employee serves in a public contact role. *Moran v. Washington*, 147 F.3d 839, 849-50 (9th Cir. 1998).

In conducting the *Pickering* balancing, the Court should consider such issues as whether the employee's speech

> impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Pool v. Vanrheen*, 297 F.3d 899, 908-09 (9th Cir. 2002); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000); *Rankin*, 483 U.S. at 388, 107 S. Ct. at 2899, 97 L. Ed. 2d at 327. The Court should also consider the "manner, time and place of the employee's expression." *Id.* The government need not demonstrate that the employee's speech actually disrupted the workplace; "reasonable predictions of disruption" will suffice. *Hudson v. Craven*, 403 F.3d 691, 700 (9th Cir. 2005); *Brewster v. Bd. of Educ.*, 149 F.3d 971, 980 (9th Cir. 1998); *Waters v. Churchill*, 511 U.S. 674, 114 S. Ct. at 1887, 128 L. Ed. 2d at 698.

The Court finds that BFT's interest in efficiently providing public transportation outweighs the Plaintiff' interest in circulating his petition at work. Applying the factors identified in *Rankin*, it appears that the Plaintiff's speech undermined the authority of, and thereby the discipline imposed by, his superiors. The evidence before the Court, which largely consists of the Plaintiff's own testimony, indicates that BFT's management made numerous attempts to retrieve the

confidential information and/or the computers from the Plaintiff.  The Plaintiff admits that he consistently refused to return the computers when directed to do so, either because he believed he was entitled to the benefit of his bargain or because he wished to bring the perceived security breach to the attention of the Board.  While the prior motivation is understandable and the latter commendable, neither negates the fact that the Plaintiff refused to follow the direction of his superiors.  Not only did the Plaintiff fail to comply with management, he also circulated a petition that criticized management by attributing to it the very security breach his own refusal to cooperate was perpetuating.

The evidence before the Court also indicates that the Plaintiff's circulation of his petition was detrimental to workplace relationships.  Burnett and Weir have testified that multiple BFT employees felt threatened by the Plaintiff's attempts to persuade them to sign the petition.  While the Plaintiff has questioned Weir's credibility, this dispute of fact is immaterial under the *Pickering* balancing test.  Even if the Court assumes that Weir overstates the number of employees who felt threatened by the Plaintiff's actions, BFT would nevertheless have grounds for a "reasonable prediction of disruption."

Finally, the Plaintiff's own testimony demonstrates that the manner, time, and place of the his speech was disruptive.  In discussing the petition with other employees during the workday, the Plaintiff caused himself and others to leave their work.  This action "supports [the employer's] fears that the functioning of [its] office

ORDER GRANTING SUMMARY JUDGMENT- 14

was endangered." *Connick*, 461 U.S. at 153, 103 S. Ct. at 1693, 75 L. Ed. 2d at 724.

**CONCLUSION**

A government employee has a First Amendment right to speak about matters of public concern. The government may nevertheless restrict the speech of its employees if the speech creates an actual or potential disturbance in efficient government operations, and the government's interest in maintaining its efficiency is greater than the employee's interest in free speech. In this case, the Plaintiff's speech involved a matter of public concern. However, the Plaintiff's exercise of his free speech rights interfered with efficient operations of the agency that employed him. BFT's interest in operating efficiently was greater than the Plaintiff's interest in circulating his petition during work hours. It was also greater than the Plaintiff's interest in appearing before the Board of Directors prior to returning the confidential information. BFT's motion for summary judgment is therefore granted. Accordingly,

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment, **Ct. Rec. 21,** is **GRANTED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this __28th__ day of June, 2007.

                        s/ Fred Van Sickle
                         Fred Van Sickle
                  United States District Judge

ORDER GRANTING SUMMARY JUDGMENT- 15